# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERARD JACKSON, individually
and on behalf of all others similarly
situated,

       Plaintiff,

v.

DIRECT BUILDING SUPPLIES LLC
d/b/a RENU SOLAR

       Defendant.

:
:   Civil File No. 4:23-cv-1569
:
:
:
:
:
:
:
:
:
:
:
:

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S
# MOTION TO DISMSS AND/OR STRIKE CLASS ALLEGATIONS

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................7

BACKGROUND ....................................................................................8

ARGUMENT .......................................................................................11

    A.  Striking Class Allegations without any Discovery is Premature. ...............11

    B.  Mr. Jackson has Sufficiently Stated a Claim ..............................................20

CONCLUSION ....................................................................................26

## TABLE OF AUTHORITIES

<u>Cases</u>

*Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-cv-6314-YGR, 2017
WL 1806583, at *7 (N.D. Cal. May 5, 2017).........................................................15

*Barton v. Temescal Wellness, LLC*, No. 4:20-cv-40114-TSH, 2021 U.S. Dist.
LEXIS 42211 (D. Mass. Mar. 8, 2021) .............................................................20

*Boardman v. Green DOT Corp.*, No. 21-cv-174, U.S. Dist. LEXIS 156403, at *1,
4-6 (W.D.N.C. Aug. 19, 2021) ..........................................................................20

*Boardman v. Green Dot Corp.,* No. 3:21- CV-00174-FDW-DSC, 2021 WL
3699856, at *2 (W.D.N.C. Aug. 19, 2021) ........................................................23

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015)............13

*Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010)...................9

*Clemons v. Bradford O'Neil Agency, LLC,* No. 21-cv-678, 2021 U.S. Dist. LEXIS
244116, at *11 (D. Mo. Dec, 22, 2021)..............................................................19

*Cunningham v. Politi*, 2019 U.S .Dist. LEXIS 102447 (E.D. Tex. April 2019) .....24

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). .......................11

*Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at
*5 (N.D. Ala. Aug. 23, 2018) .............................................................................11

*Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118 (N.D. Tex. 2020) .................24

*Hodgin v. Parker Waichman LLP*, Civil Action No. 3:14-cv-733-DJH, 2015 U.S. Dist. LEXIS 192262 (W.D. Ky. Sep. 30, 2015) ................................................... 22

*Jackson v. Locust Med., LLC*, No. 4:22-CV-00424, 2022 U.S. Dist. LEXIS 197057, at *7 (M.D. Pa. Oct. 28, 2022) ................................................................ 6

*Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.,* No. 4:22-CV-01659, 2023 U.S. Dist. LEXIS 41211, at *7 (M.D. Pa. Mar. 10, 2023) ................................... 16

*Jimenez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 U.S. Dist. LEXIS 95993, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010) ....................................... 10

*Johnson v. Comodo Grp., Inc.,* No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *25-27 (D.N.J. Jan. 31, 2020). .................................................. 16

*Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 657 (4th Cir. 2019) ................... 23

*Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) ......................................................................................................... 15

*Luciano v. Teachers Ins. & Annuity Ass'n of Am. — Coll. Ret. Equities Fund*, Civil Action No. 15-6726 (ZNQ) (DEA), 2022 U.S. Dist. LEXIS 64671, at *9 (D.N.J. Apr. 7, 2022). .......................................................................................................... 5

*Mantha v. Quotewizard.com, LLC,* No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059, at *11-14 (D. Mass. Dec. 3, 2021) ........................................................ 24

*McPeak v. S-L Distribution Co.*, Civ. No. 12-348, 2014 U.S. Dist. LEXIS 123728, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014)....................................................6

*Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) ....................................................................................11

*Riley v. California*, 573 U.S. 373, 397 (2014).......................................................21

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). ...13

*Rosenberg v. LoanDepot.com LLC*, Civil Action No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928 (D. Mass. Jan. 24, 2020).....................................................19

*Rosenberg v. LoanDepot.com LLC*, Civil Action No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928, at *27 (D. Mass. Jan. 24, 2020)..........................................19

*Ross v. Blake*, 578 U.S. 632, 638 (2016). ...............................................................21

*Sagar v. Kelly Auto Grp., Inc.*, No. 21-cv-10540, 2021 U.S. Dist. LEXIS 227781, at *16 (D. Mass. Nov. 29, 2021) ........................................................................20

*Sauter v. CVS Pharmacy, Inc*., No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014)..............................................12

*Schilling v. Kenton Cty., Ky.,* No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050, at *11-12 (E.D. Ky. Jan. 27, 2011).........................................................................10

*Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019) ......23

*Stevens-Bratton v. Trugreen, Inc.,* 437 F.Supp.3d 648 (W.D. Tenn. Feb. 4, 2020)22

*Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d
876, 881 (8th Cir. 2005) ..........................................................................9

*Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 615 (E.D. Pa.
2015) ................................................................................... 10, 14

**Other Authorities**

https://www.dictionary.com/browse/telemarketing (Last Visited November 30,
2023). ....................................................................................14

https://www.ftc.gov/news-events/news/press-releases/2022/01/ftc-issues-biennial-
report-congress-national-do-not-call-registry (Last Visited November 30, 2023).
...........................................................................................10


47 C.F.R. § 64.1200(c)(2) ..........................................................................21

47 C.F.R. § 64.2305(b) ..........................................................................22

47 C.F.R. § 64.2305(d) ..........................................................................22

**INTRODUCTION**

Direct Building Supplies LLC d/b/a Renu Solar ("Renu Solar") has filed a motion to strike Mr. Jackson's class allegations as it simply claims that Mr. Jackson, without any discovery, doesn't have sufficient information to support a class action claim. "Motions to strike are generally viewed with disfavor[] and will usually be denied unless the allegations in the pleading have no possible relation to the controversy[] and may cause prejudice to one of the parties." *Luciano v. Teachers Ins. & Annuity Ass'n of Am. — Coll. Ret. Equities Fund*, Civil Action No. 15-6726 (ZNQ) (DEA), 2022 U.S. Dist. LEXIS 64671, at *9 (D.N.J. Apr. 7, 2022). "In a putative class action suit, a plaintiff is generally entitled to discover information relevant to Rule 23's class certification requirements." *McPeak v. S-L Distribution Co.*, Civ. No. 12-348, 2014 U.S. Dist. LEXIS 123728, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014). Thus, "a court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts." *Id.*

This Court ruled on a substantively similar motion just last month in *Jackson v. Locust Med., LLC*, No. 4:22-CV-00424, 2022 U.S. Dist. LEXIS 197057, at *7 (M.D. Pa. Oct. 28, 2022) holding:

> It simply is not possible at this stage of litigation to determine whether
> some members of the proposed class were removed from the NDNCR

or whether Locust will be able to sustain its burden of demonstrating that some proposed class members consented to receive communications from Locust. This commonsense proposition is amply supported by the numerous cases.

The Court should do the same here.

Mr. Jackson has also stated a claim that he is a residential telephone subscriber as he pleads that it is his personal number, not associated with a business, in his individual name.

## BACKGROUND

In this lawsuit, Mr. Jackson has alleged that Renu Solar made telemarketing calls to himself and other putative class members despite not having the requisite consent to contact those individuals who, like the Plaintiff, were listed on the National Do Not Call Registry. *See* ECF No. 20 at ¶ 3.

Renu Solar offers solar services and to generate leads, Renu Solar makes telemarketing calls to consumers who have never had a relationship and who have never consented to receive their calls. *Id.* at ¶ 15-16. Mr. Jackson's telephone number (the "Number"), (814)-876-XXXX, is on the National Do Not Call Registry for more than a year prior to the calls at issue. *Id.* at ¶ 18. That is a residential telephone number for Mr. Jackson. *Id.* at ¶ 19. That telephone number is used for personal calls only. *Id.* at ¶ 20. That telephone number is not associated

with a business or registered to a business. *Id.* at ¶ 21. The telephone bill for that number only lists Mr. Jackson's name for that telephone number. *Id.* at ¶ 22.

In early of 2021, the Plaintiff filed a lawsuit against the Defendant for unsolicited telemarketing calls. *Id.* at ¶ 23. Despite this, the Defendant made five telemarketing calls to the Plaintiff from August 9, 2021 through September 28, 2021. *Id.* at ¶ 24.

All of the calls that were answered followed a similar script, they advertised residential solar electric product and installation services, which are those offered by the Defendant. *Id.* at ¶ 25-26. Indeed, the call on September 28, 2021, which just like the prior calls, used a spoofed Caller ID, began with the same scripted telemarketing pitch as the other calls, but this time the Plaintiff spoke with an individual who identified himself as "Edmund". *Id.* at ¶ 27. Following the telemarketing call, the Plaintiff then received an email from the telemarketer, "Jacob Dimpsey <jdimpsey@renucompany.com>" confirming the identify the unsolicited telemarketer from this call and the prior calls. *Id.* at ¶ 28-29. The Plaintiff then received an email from the telemarketer, "Jacob Dimpsey <jdimpsey@renucompany.com>" confirming the identify the unsolicited telemarketer from this call and the prior calls. *Id.* at ¶ 32.

Again, the Plaintiff filed a lawsuit against the Defendant. *Id.* at ¶ 33. But this did not stop the calls, as the Plaintiff has received four more telemarketing calls from the Defendant promoting its solar services, including calls on July 5, 19, August 1 and September 8, 2023. *Id.* at ¶ 34-35. Similar to the first set of calls, all of the calls that were answered followed a similar script, where the calls advertised residential solar electric product and installation services, which are those offered by the Defendant. *Id.* at ¶ 36-37. Indeed, the calls were clearly sent by the Defendant promoting their goods as counsel for the Defendant provided a recording of the final call to counsel for the Plaintiff. *Id.* at ¶ 38.

Due to the *en masse* nature of telemarketing calls, the Plaintiff has filed this case as a putative class action:

> **<u>National Do Not Call Registry Class</u>**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of the Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

*Id.* at ¶ 43.

Renu Solar also decries the fact that Mr. Jackson has previously brought TCPA lawsuits against them and others. *See Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) ("Phillip Charvat has not been shy in taking on the role of a private attorney general under the [TCPA]."); *Universal Underwriters*

*Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005)

(private right of action under TCPA demonstrates Congressional intent to

incentivize aggrieved parties to act as "private attorneys general"). Renu Solar asks

how Mr. Jackson can continue to receive telemarketing calls that result in lawsuits?

That's because most everyone receives such calls and wants to be on the Do Not

Call Registry:

> The DNC Registry currently has 244.3 million active registrations, an increase of more than 2.8 million from the previous fiscal year. According to the report, during FY 2021, 2,000 businesses and other entities paid nearly $13 million to access the Registry. More than 12,000 entities subscribed to access the Registry.

*See* https://www.ftc.gov/news-events/news/press-releases/2022/01/ftc-issues-

biennial-report-congress-national-do-not-call-registry (Last Visited November 30,

2023). However, there are only a select few that are willing to serve as a class

representative and all that entails. If Defendant had used the registry prior to

making its calls, or simply not called someone who had sued them for illegal

calling conduct, this lawsuit would not have occurred.

**ARGUMENT**

**A.    Striking Class Allegations without any Discovery is Premature.**

Courts have observed that "the standard of review [on a motion to strike class

allegations] is the same as that applied in deciding a motion to dismiss under Rule

12(b)(6)." *Schilling v. Kenton Cty., Ky.,* No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050, at *11-12 (E.D. Ky. Jan. 27, 2011) (citing *Jimenez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 U.S. Dist. LEXIS 95993, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010)). Accordingly, a defendant seeking to strike class allegations "has the burden of demonstrating from the face of the [plaintiff's] complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiff[] may be able to prove." *Id.* In other words, striking class allegations is appropriate "only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23[.]" *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (cited by the Defendant).

Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018). Indeed, the Third Circuit has held, "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one

simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (internal annotations omitted).  Contrary to what Defendant argues, to determine class membership in this case the Court will ask the following series of objective, factual questions:

- Did Renu Solar make calls to numbers on the National Do Not Call Registry?

- Were those numbers called 2 or more times in a 12 month period?

- Were those numbers "residential"?

- Does Defendant claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call Plaintiff?

*See id*. at *8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

Renu Solar claims that the issue of whether or not it had consent to contact people will create mini-trials. But, "[c]ourts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc*., No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *2 (S.D. Ohio May

7, 2014) (ultimately finding plaintiff in a TCPA case improperly pled a fail-safe class, but granting plaintiff leave to amend its pleadings to remove reference to consent, which is not included here).

Renu Solar's argument focuses on a potential affirmative defense of consent (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action. In rejecting the same argument previously in a TCPA case, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020).

Even though Mr. Jackson does not believe that Renu Solar obtained the appropriate prior express written consent for its calls or "established business relationship" with the called party because it was a current customer (as the calls were designed to solicit new business), the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a court held

that a TCPA plaintiff needed to amend his class definition because he included that language in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant. [*24] This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, the Plaintiff avoided that potentially fatal flaw in drafting. Indeed, *Zarichny v. Complete Payment Recovery Servs.,* 80 F. Supp. 3d 610 (E.D. Pa. 2015), relied upon by Renu Solar suffered from this same drafting issue, "The putative TCPA class is comprised of those people who received CPRS telephone calls **without the recipient's 'prior express consent'**". *Id.* at 625 (E.D. Pa. 2015) (emphasis added).

Renu Solar attempts to side step that argument by claiming that when the Plaintiff's class definition states "telemarketing", what it really means is a legal term of "telephone solicitations", but that's simply not true, which is why the Plaintiff did not use that phrase. "Telemarketing" means what it says, which is

"selling or advertising by telephone". *See*

https://www.dictionary.com/browse/telemarketing (Last Visited November 30,

2023). This Court should not strike the Plaintiff's class claims because Renu Solar

claims that he really meant a phrase other than the word he used.

Similarly, Renu Solar's claim that it will be impossible to certify the class

because it will be impossibly to identify what individuals were called "on behalf

of" Renu Solar is also premature. Again, it will be discovery that will determine

which calls third parties made for Renu Solar or not, and the contours of the class

definition can be adjusted appropriately. However, to claim that it is impossible to

certify such a class ignores the cast law that a defendant's potential vicarious

liability for telemarketing calls is a common question among class members. *See,*

*e.g., Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-cv-6314-YGR,

2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017) (finding whether defendant was

vicariously liable for calls made by an entity it contracted with was a common

question and certifying claims under the TCPA). It is also possible that Renu Solar

will not assert that the third parties used to make calls, if any, were independent

contractors. The Plaintiff's use of "on behalf of" also addresses the potential

scenario that the Defendant, like many businesses, simply outsourced

telemarketing to a separate entity other than the corporation.

Furthermore, the Plaintiff alleges that he received scripted telemarketing calls over a multi-year period despite the fact that he was on the National Do Not Call Registry. The scripted nature of the calls, Renu Solar calling him indiscriminately despite being sued before for TCPA violations and the generic nature of their telemarketing pitch all support class action status and numerosity, but again, it will be discovery that confirms these allegations as the Third Circuit explained in a TCPA case, *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) (holding that a court may deny class certification before discovery only if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," and explaining that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues).

Finally, this Court should not hold as a matter of law that a TCPA class is not ascertainable. Indeed, identifying class members in a TCPA case is simply a matter of expert work as other Courts in this Circuit have found when certifying a TCPA case. *See e.g. Johnson v. Comodo Grp., Inc.,* No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *25-27 (D.N.J. Jan. 31, 2020). The Court should find the same here.

In rejecting a similar argument previously in a TCPA case, this Court

rejected an identical argument over the same class definition proposed here in

*Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.,* No. 4:22-CV-01659, 2023

U.S. Dist. LEXIS 41211, at *7 (M.D. Pa. Mar. 10, 2023) (footnotes omitted):

> Meadowbrook directs this Court to a 2015 ruling by the Honorable Stewart R. Dalzell of the United States District Court for the Eastern District of Pennsylvania in *Zarichny v. Complete Payment Recovery Services, Inc.* There, the plaintiff brought a putative class action under the TCPA on behalf of herself and similarly situated individuals who received one or more calls on their personal cell phones from the defendants using an automatic telephone dialing system without prior consent. Judge Dalzell concluded that the class was an impermissible fail-safe class because "there is no way to provide notice to that putative class without the [*8] sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]."
>
> Nine months after his ruling in *Zarichny*, Judge Dalzell confronted a similar question—but reached a different result. In *Abella v. Student Aid Center, Inc.*, as in *Zarichny*, the defendant moved to strike the class allegations relating to violations of the TCPA, arguing that "the class definition proposed by the plaintiff was an impermissible 'fail-safe' class."**37** But Judge Dalzell concluded that the proposed class in *Abella* did not "meet[] the definition of a fail-safe class," highlighting two distinctions between the proposed classes in *Abella* and *Zarichny*: (1) unlike the proposed class in *Zarichny*, the *Abella* class "makes no reference to [the defendant's] use of an automatic telephone dialing system[,] . . . which is a required element for a claim under the TCPA"; and (2) the plaintiff in *Abella* did not "rely[] on potential class members' word when determining whether they gave [the defendant] consent to send them text messages," relying

instead [*9] on the defendant's "internal records that detail whether it received consent to text certain phone numbers."

Since 2015, district courts within this circuit have consistently emphasized the latter distinction Judge Dalzell highlighted in *Abella*. For example, in *Johnson v. Ally Financial Inc.*, my colleague, the Honorable Christopher C. Conner, declined to strike class allegations concerning the following proposed class: "all persons in the United States who received a call from [the defendant] with the aid of an automatic telephone dialing system when [the defendant's] business records do not indicate it received prior consent."**39** Judge Conner held that this proposed class was not a "facially uncertifiable" fail-safe class because it was properly defined with reference to objective, factual criteria—i.e., the defendant's "business records [that] may (with discovery) reveal an ascertainable []class"—that fall "outside of the legal requirements of the [TCPA]."…

Here, Jackson argues that like the plaintiffs in *Abella, Johnson, O.P. Schuman*, and *Shelton*, he elided the fail-safe concern present in *Zarichny* by making the "conscious decision to not include language about individuals who have not provided their 'prior express written consent' in the class definition." The Court agrees. The issue of whether Meadowbrook's "conduct constitutes a violation of the TCPA" is arguably a question of law and fact common to Jackson and the other proposed class members. But that alone does not render the proposed class fail-safe. The question here is whether Jackson's proposed class is defined with reference to objective, factual criteria that fall "outside of the legal requirements of the [TCPA]." Consistent with prior district court rulings in this circuit, the Court finds that it may well be.

Indeed, Mr. Jackson utilized the same definition in *Meadowbrook* as he did here:

**National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

*See* 4:22-CV-01659 (E.D. Pa.), ECF No. 1 *compared with*:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of the Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

*See* ECF No. 20 at ¶ 43. This Court should hold the same that it did in

*Meadowbrook* and deny the motion.

### B.    Mr. Jackson has Sufficiently Stated a Claim

Mr. Jackson has made several plain allegations that he is a residential

telephone subscriber. This includes that:

- Mr. Jackson's telephone number (the "Number"), (814)-876-XXXX, is on the National Do Not Call Registry for more than a year prior to the calls at issue. *See* ECF No. 20. at ¶ 18.
- That is a residential telephone number for Mr. Jackson. *Id.* at ¶ 19.
- That telephone number is used for personal calls only. *Id.* at ¶ 20.
- That telephone number is not associated with a business or registered to a business. *Id.* at ¶ 21.
- The telephone bill for that number only lists Mr. Jackson's name for that telephone number. *Id.* at ¶ 22.

Mr. Jackson pleads far more than is required and his allegations are more than

sufficient. *Rosenberg v. LoanDepot.com LLC*, Civil Action No. 19-10661-NMG,

2020 U.S. Dist. LEXIS 11928, at *27 (D. Mass. Jan. 24, 2020) ("Rosenberg

submits that he placed his cellular phone number on the National Do Not Call

registry and that he uses his cell phone as his residential line. Those allegations are adequate for the purposes of pleading."). The Plaintiff does not make lengthy allegations because none are required for the simple factual proposition that he uses his cellular telephone line for residential purposes. *Clemons v. Bradford O'Neil Agency, LLC,* No. 21-cv-678, 2021 U.S. Dist. LEXIS 244116, at *11 (D. Mo. Dec, 22, 2021) ("While the question of whether Clemons uses her cell phone for personal and residential purpose has important legal consequences for this case, Clemons's allegation is a factual one and in no way conclusory.  Clemon's pleading places the Agency on notice that one of the issues in the case is whether Clemons uses her cell phone for residential purposes. Rule 8 requires nothing more.").

While it is true that Mr. Jackson did not attach his cell phone bill to a public pleading, the Defendant's assertion that he should have is not accompanied by any TCPA case law, because it is not believed that any exists. Courts that have analyzed the question on motions to dismiss have repeatedly rejected similar arguments. *See Barton v. Temescal Wellness, LLC*, No. 4:20-cv-40114-TSH, 2021 U.S. Dist. LEXIS 42211, at *13-14 (D. Mass. Mar. 8, 2021) ("Because Barton has pled that her cell phone number is registered on the Do Not Call Registry and the Do Not Call Registry is only open to residential subscribers and keeping in mind

that at the motion to dismiss stage all reasonable inferences are to be made in her favor, I find that Barton has sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number to survive the Rule 12(b)(6) motion."). Allegations that the plaintiff uses the phone for personal residential purposes are sufficient. *See, e.g.*, *Boardman v. Green DOT Corp.*, No. 21-cv-174, U.S. Dist. LEXIS 156403, at *1, 4-6 (W.D.N.C. Aug. 19, 2021) (allegation that plaintiff received text message on her "residential cellular telephone" sufficient to survive motion to dismiss); *Sagar v. Kelly Auto Grp., Inc.*, No. 21-cv-10540, 2021 U.S. Dist. LEXIS 227781, at *16 (D. Mass. Nov. 29, 2021) ("Kelly Auto argues that Sagar has not alleged any facts supporting his 'bare formulaic assertions' that his number is a residential telephone line . . . . This argument is a non-starter. Sagar has plausibly pleaded that he uses his cell phone for personal purposes as a residential line and that he has put it on the National Do-Not-Call Registry.").

Finally, the Defendant asserts that because Mr. Jackson's phone number is a cellular telephone, it cannot be a residential number. Defendant's argument that a cell phone cannot be a "residential" telephone number, and therefore that no cellular telephone is entitled to the TCPA's Registry protections, rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory

interpretation, the Court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016).

In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers." *See* 47 C.F.R. § 64.1200(c)(2) (limiting DNC Registry to "residential" subscribed numbers). Reading the term "residential" to exclude other services, such as cellular telephone services, used for personal, household purposes is inconsistent with multiple canons of construction. Defendant's reading, however, arbitrarily limits the scope of the term "residential" to read "copper landline." No part of the statute contains a suggestion that the general term "residential" should be given such a limited, narrow meaning. Importantly, at the time the DNC Registry provisions of the TCPA were enacted, the Code of Federal Regulations specifically relating to "Telecommunications" defined a "residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d). A "business subscriber" was defined as a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b). Accordingly, consumers who subscribe to telephone exchange services are protected by the DNC Registry. Businesses who subscribe to telephone exchange services for businesses are not.

Consistent with text, history, and precedent, courts have repeatedly recognize the protections afforded wireless numbers by the TCPA and the DNC Registry. *See Hodgin v. Parker Waichman LLP*, Civil Action No. 3:14-cv-733-DJH, 2015 U.S. Dist. LEXIS 192262 *9 (W.D. Ky. Sep. 30, 2015) (finding defendant's "assertion that cell phone numbers are not allowed on the national do-not-call list . . . meritless"); *Stevens-Bratton v. Trugreen, Inc.,* 437 F.Supp.3d 648 (W.D. Tenn. Feb. 4, 2020) (reviewing applicable regulations and concluding that cell phones may be listed on the DNC Registry); *Boardman v. Green Dot Corp.,* No. 3:21- CV-00174-FDW-DSC, 2021 WL 3699856, at *2 (W.D.N.C. Aug. 19, 2021) (Denying motion to dismiss holding "a cellphone may plausibly be alleged as residential for purposes of the TCPA."). Indeed, the Fourth Circuit in *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 657 (4th Cir. 2019) concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*:

> The statute marks its own boundary. Suit can only be brought by those who receive multiple violative calls. Calls are only violative if the phone number was on the Do-Not-Call registry. And **a number can only be placed on such a registry if the number is a residential line.** Whatever work we may be required to do for more broadly worded statutes, Congress did the work for us here.

*Id. at 657* (emphasis added). If Congress intended to limit "residential subscribers" to users of wireline devices, it would have done so. Congress instead chose to

focus on the subscriber's *use* of the phone, rather than the *technology* by which a given phone functions.

The cases cited by the Defendant are unpersuasive. For example, in *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019), the plaintiff received multiple telemarketing calls to his cellular telephone from the defendant in alleged violation of the TCPA and filed suit. Despite The court *sua sponte* expressed its own divination whether cellular telephone numbers were covered by the TCPA's DNC provisions. The court nevertheless awarded the plaintiff $33,000 in statutory damages.[1] Defendant also relies on *Cunningham v. Politi*, 2019 U.S. Dist. LEXIS 102447 (E.D. Tex. April 2019), an outlier case which failed to acknowledge 47 C.F.R. § 64.1200(e) or 18 F.C.C. Rcd. 14014, at ¶ 33, ¶ 36, authorities that unequivocally recognize that wireless numbers can be listed on the DNC Registry. At least one court interpreting *Politi* has recognized it as an "isolated authority" that is contrary to "common sense." *Hirsch v. USHealth*

---

[1] Indeed, subsequent decisions from the Eastern District of Pennsylvania have made clear that the TCPA's Do Not Call protections apply to cell phones. *See Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915-KSM, 2021 WL 5495778 (E.D. Pa. Nov. 22, 2021) ("we find that plaintiff's allegations pertaining to his cell phone—namely, that he used the cell phone for personal purposes, including booking vacations—are sufficient" to establish plaintiff was a "residential subscriber").

*Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020). The remaining cases cited

by the Defendant also relate to *pro se* cases filed by the same plaintiff that pursued

the case in *Politi*.

Indeed, in another TCPA case involving a National Do Not Call Registry

registered cellular number, a district court *granted summary judgment for the*

*Plaintiff. See Mantha v. Quotewizard.com, LLC,* No. 19-12235-LTS1, 2021 U.S.

Dist. LEXIS 245059, at *11-14 (D. Mass. Dec. 3, 2021).

Of course, while the Plaintiff asserts that this Court should find the same,

summary judgment is another ruling for another day. For now, the Court should

liberally construe the Complaint in favor of the Plaintiff and deny the

Defendant's motion that would require the blanket finding that cellular telephone

numbers are not entitled to the protection of the National Do Not Call Registry

and open the floodgates of calls to cell phones on the Registry.

## CONCLUSION

For the foregoing reasons, the Defendant's motion should be denied and this

matter should proceed to discovery.

Respectfully submitted,

*/s/ Anthony I. Paronich*
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com
*Pro Hac Vice*

Jeremy C. Jackson, Esq.
Attorney for Plaintiff
403 South Allen Street, Suite 210
State College, PA  16801
(814) 234-2626 Telephone
(814) 237-8700 Facsimile
jjackson@bower-law.com

*Attorneys for Plaintiff and proposed class*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(2)

I hereby certify that the foregoing brief contains 4,949 words as computed by MS Word.

*/s/ Anthony I. Paronich*
PARONICH LAW, P.C.
Anthony I. Paronich