**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GERARD JACKSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DIRECT BUILDING SUPPLIES LLC d/b/a RENU SOLAR,

Defendant.

No. 4:23-CV-01569

(Chief Judge Brann)

**MEMORANDUM OPINION**

**APRIL 22, 2024**

## I. BACKGROUND

On October 25, 2023, Gerard Jackson, Plaintiff, filed an Amended Complaint against Direct Building Supplies, LLC ("Direct Building Supplies"), Defendant, alleging a violation of the Telephone Consumer Protection Act ("TCPA") on behalf of himself and a putative class.[1] After the Court denied its Motion to Dismiss,[2] Direct Building Supplies filed an Answer with a Counterclaim on January 31, 2024.[3] Pending before the Court is Jackson's Motion to Dismiss Direct Building Supplies' Counterclaim filed pursuant to Federal Rules of Civil

---

1 *See* Doc. 20 (Amended Compl.).
2 *See* Doc. 27 (Ord. Denying Motion to Dismiss Amended Compl.).
3 *See* Doc. 28 (Answer with Counterclaim).

Procedure 12(b)(1), 9(b), and 12(b)(6).[4] This motion is now ripe for disposition; for the reasons that follow, it is denied.

## II. DISCUSSION

### A. Rule 12(b)(1) Standard

Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim."[5] The first step in evaluating a 12(b)(1) motion is to address whether it presents a "facial" or "factual" attack on the claims.[6] The "distinction is significant because, among other things, it determines whether we accept as true the non-moving party's facts as alleged in the pleadings."[7]

A facial challenge contests the court's subject-matter jurisdiction "without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"[8] A factual challenge, by contrast, asserts that the underlying facts of the case do not support jurisdiction.[9] When considering a factual challenge, a court may consider evidence outside the pleadings.[10] Further,

---

4 *See* Doc. 34 (Motion to Dismiss Counterclaim).

5 *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

6 *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (citation omitted).

7 *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 625, 632 (3d Cir. 2017) (citation omitted).

8 *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 392 n.3 (3d Cir. 2006)).

9 *See Aichele*, 757 F.3d at 358.

10 *See id.*

the non-moving party bears the burden of contesting a factual challenge and proving that jurisdiction exists.[11]

Nevertheless, "a district court must take care not to reach the merits of a case" when substantive and jurisdictional facts are intertwined.[12] Where a court could not rule on jurisdiction without also making a determination on the merits, "the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the" case.[13] In these circumstances, courts must demand "less in the way of jurisdictional proof than would be appropriate at a trial stage."[14]

**B. Rule 9(b) Standard**

"Rule 9(b) essentially requires Plaintiffs to allege the who, what, when, where, and how elements to state a claim arising in fraud."[15] The purpose of this heightened pleading standard is to "give[] defendants notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements."[16] "Despite Rule 9(b)'s stringent requirements, however, [the United States Court of

---

11 *See Davis*, 824 F.3d at 346.

12 *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

13 *Davis*, 824 F.3d at 348 (internal quotation marks omitted) (quoting *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 898 n.5 (3d Cir. 1987)).

14 *CNA*, 535 F.3d at 144 (citation omitted).

15 *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 703 (D.N.J. 2013) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1423 (3d Cir. 1997)).

16 *In re Burlington*, 114 F.3d at 1418 (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)).

Appeals for the Third Circuit] has stated that 'courts should be sensitive to the fact that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud.'"[17] "Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control."[18] "But even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice."[19]

### C. Rule 12(b)(6) Standard

Under Rule 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[20] and *Ashcroft v. Iqbal*,[21] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[22] The Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions,

---

17 *Id.* (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992)).
18 *Id.* (citing *Shaprio*, 964 F.2d at 285).
19 *Id.*
20 550 U.S. 544 (2007).
21 556 U.S. 662 (2009).
22 *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[23]

### D. Factual Background

#### 1. Jackson is a Serial TCPA Litigator

Since 2018, Plaintiff has filed "upwards" of twenty TCPA lawsuits before this Court.[24] In fact, Jackson previously filed a TCPA suit against Direct Building Supplies in the Court of Common Pleas of Centre County.[25] This matter was "resolved" in April 2021, and Defendant added Jackson to its do-not-call list.[26] Direct Building Supplies notes that it is "unclear how [he] continues to receive so many allegedly violative calls …."[27]

#### 2. The Present Suit

In the present suit, Jackson brings a TCPA claim on behalf of himself and a putative class against Direct Building Supplies.[28]

#### 3. Jackson Opted Into Being Contacted

Sometime between April 2021 and September 27, 2021, Jackson "consented to being contacted by submitting 'opt-in' data requesting a phone call to a third-

---

23 *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

24 Doc. 28 (Answer with Counterclaim) at 22.

25 *See id.*

26 *Id.* at 23.

27 *Id.* at 22.

28 *See* Doc. 20 (Amended Compl.).

party vendor."[29] This data provided Jackson's phone number and his home address under the name Barry Johnson.[30] Curiously, an "apparent fake email address of 'bluebrrd@gmail.com'" was also submitted by Plaintiff.[31]

**4. Third-Party Vendor and Direct Building Supplies Contact Jackson**

On September 28, 2021, the third-party vendor contacted Jackson.[32] After confirming his interest, the third-party vendor transferred Plaintiff to Defendant's representative.[33] Over the course of this call, Jackson responded to "Barry" and "Mr. Johnson" and "feigned an interest in purchasing solar products from" Direct Building Supplies.[34] This individual gave Defendant both Jackson's home address and another seemingly fake email address of "bluebird3224@gmail.com" and "requested an at home appointment … to purchase solar products."[35] The representative then "confirmed an appointment at Plaintiff's home on Friday, October 8, 2021," and Jackson requested that information be sent to "bluebird3224@gmail.com" so that he may "review the company performing the

29 Doc. 28 (Answer with Counterclaim) at 23.
30 *See id.*
31 *Id.*
32 *See id.*
33 *See id.*
34 *Id.*
35 *Id.*

work."[36] But when asked "for his real name and his wife's name, Plaintiff promptly hung up the phone."[37]

The representative then emailed "Barry" at the "bluebird3224@gmail.com" email address to confirm the appointment.[38] Jackson responded by indicating his lack of interest and asking for a copy Defendant's do not call policy.[39] Plaintiff did not sign the email and "did not rebut" the representative's use of the name Barry.[40]

Direct Building Supplies maintains that Jackson "submitted the opt-in data for purposes of manufacturing a TCPA claim against Defendant by inducing Defendant's third-party vendor into calling a number registered on the National Do Not Call Registry."[41] Further, Defendant asserts that it called Jackson's number in "reliance on the opt-in data submitted by Plaintiff that 'Barry Johnson' was interested in purchasing solar products."[42] Finally, Direct Building Supplies claims damages "in the form of ongoing fees and costs, prior expenditures, and reputational damage."[43]

**E. Analysis**

In support of his Motion, Jackson argues that Defendant: (1) lacks standing to maintain this counterclaim; (2) has failed to meet Rule 9(b)'s heightened

---

36 *Id.* at 24.
37 *Id.*
38 *See id.*
39 *See id.*
40 *Id.*
41 *Id.* at 25.
42 *Id.*
43 *Id.*

pleading standard; and (3) did not plead all the elements of fraud.[44] Each of these arguments will be addressed in turn.

**1. Standing**

Standing contains three elements: "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."[45] In arguing that Direct Building Supplies lacks standing, Plaintiff contends no conduct is "fairly traceable" to him.[46] Since Jackson has mounted a factual attack,[47] the Court may consider evidence outside of the pleadings, and Direct Building Supplies bears the burden of proving that jurisdiction exists.[48]

In his declaration, Jackson claimed that he "never provided [his] consent, let alone any of [his] information, to Defendant or any third-parties …" nor has he ever used the bluebrrd@gmail.com email address.[49] Further, Plaintiff's phone number is on the Do Not call Registry, and he does not "maintain any telephone numbers for the purpose of bringing lawsuits, including under the TCPA."[50]

---

44 *See* Doc. 35 (Brief in Support of Motion to Dismiss) at 2, 6, 10.
45 *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).
46 Doc. 35 (Brief in Support of Motion to Dismiss) at 6.
47 *See e.g.*, *Aichele*, 757 F.3d at 358.
48 *See id.*
49 *See* Doc. 35 (Brief in Support of Motion to Dismiss), Ex. 1 (Jackson Decl.) ¶¶ 8, 14.
50 *Id.* ¶¶ 16-17.

Jackson concludes that there is no conduct that is traceable to him. In doing so, Plaintiff "raises facts that go to the core of the merits …."[51] Whether Jackson made the fraudulent representations "is a substantive issue[] … so intertwined [with the underlying merits] that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action."[52] Accordingly, "the proper procedure is for the district court to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the" case.[53] I will instead address Jackson's "arguments under the Rule 12(b)(6) framework."[54]

### 2. Rule 9(b)'s Particularity Requirement

Again, Direct Building Supplies must identify the "who, what, when, where, and how" of its fraud claim to satisfy Rule 9(b). Defendant clearly identified Jackson as the individual that made the allegedly fraudulent statements concerning the name and email address.[55] This addresses the "who" and the "what" of the claim. Where this conduct occurred is likely within Jackson's exclusive control. Alleging that Jackson submitted falsified opt-in data to the third-party vendor describes "how" the fraudulent representation occurred.[56] While no explicit date is provided, this conduct presumably occurred between April 2021 and September

---

51 *Perrong v. Liberty Power Corp., LLC*, 411 F. Supp. 3d 258, 271 (D. Del. 2019).

52 *Rogers v. Citizens Bank, N.A.*, No. 2:22-CV-00456-CCW, 2022 U.S. Dist. LEXIS 156844, at *6-7 (W.D. Pa. Aug. 31, 2022) (quoting *Davis*, 824 F.3d at 348).

53 *Davis*, 824 F.3d at 348.

54 *Rogers*, 2022 U.S. Dist. LEXIS 156844, at *7.

55 *See* Doc. 28 (Answer with Counterclaim) at 23.

56 *See id.*

27, 2021.[57] In light of the information provided, Jackson is on notice as to the "precise misconduct with which [he is] charged."[58] Direct Building Supplies has therefore satisfied Rule 9(b)'s heightened pleading standard by "inject[ing] precision or some other measure of substantiation" into its counterclaim.[59]

### 3. The Counterclaim of Fraud

"To plead fraud under Pennsylvania law, a plaintiff must allege (1) 'a representation' which is (2) 'material to the transaction at hand,' (3) 'made falsely, with knowledge of its falsity or recklessness as to whether it is true or false,' and (4) made 'with the intent of misleading another into relying on it'; (5) 'justifiable reliance on the misrepresentation'; and (6) that 'the resulting injury was proximately caused by the reliance.'"[60]

Jackson challenges Direct Building Supplies' ability to establish all six elements of fraud. In this section I will also evaluate the arguments raised by Plaintiff when challenging Defendant's standing, as discussed above.

---

57 *See id.* at 24.

58 *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-224 (3d Cir. 2004)).

59 *Id.*

60 *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).

**a. The First Three Elements of Fraud**

Defendant's counterclaim clearly identified the relevant representations as the false name and e-mail address submitted to the third-party vendor.[61] These representations are "material to the transaction at hand" because they are allegedly the reason the third-party vendor and Defendant contacted Jackson.[62] Plaintiff's knowledge of its falsity is also evident given Barry Johnson is not his name.[63]

**b. Reliance – The Fourth and Fifth Elements**

As alleged, these false representations exemplify an "intent" to mislead Defendant "into relying on" them in order to manufacture a TCPA claim.[64] Direct Building Supplies has also demonstrated justifiable reliance on the representations. First, I note that the third-party vendor only contacted Jackson after "[h]aving received [his] consent …."[65] Next, Defendant specifically alleged that it placed the call due to "the opt-in data submitted by Plaintiff that 'Barry Johnson' was interested in purchasing solar products."[66] At this stage, these allegations sufficiently show justifiable reliance.[67]

Although an accurate statement, the fact that consumers can provide false information to telemarketers is irrelevant to the present circumstances. Jackson did

61 *See* Doc. 28 (Answer with Counterclaim) at 23.
62 *Shuker*, 885 F.3d at 778.
63 *See id.*
64 *Id.*
65 *See* Doc. 28 (Answer with Counterclaim) at 23.
66 *Id.* at 25.
67 *See e.g.*, *Anthony v. F.S.B.*, No. 1:21-CV-02509, 2022 U.S. Dist. LEXIS 58998, at *13-14 (N.D. Ill. Mar. 30, 2022) (finding reliance under similar circumstances).

not allegedly provide false information after Direct Building Services or its third-party vendor unilaterally contacted him; instead, he purportedly chose to submit false information.[68] This argument currently has no bearing on Defendant's reliance on the false representation.

**c. The Sixth Element – Injury and Proximate Causation**

Finally, I conclude that Defendant has sufficiently alleged that its resulting injury was proximately caused by its reliance on the false representations. Despite Jackson's contention, there is conduct that is traceable to him when the factual allegations are accepted as true, as required under Rule 12(b)(6). Jackson "consented to being contacted by submitting 'opt-in' data requesting a phone call to a third-party vendor."[69] The opt-in data provided by Plaintiff contained the fake name and e-mail address along with Jackson's real home address and phone number.[70] These representations are directly attributable to Plaintiff. In reaching this conclusion, I also note that the standing cases identified by Plaintiff are certainly distinguishable from the present circumstances.[71] Those cases involved

---

[68] *See* Doc. 28 (Answer with Counterclaim) at 23.

[69] *Id.*

[70] *Id.*

[71] *See* Doc. 35 (Brief in Support of Motion to Dismiss) at 8 (citing *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451 (D.N.J. 2013); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359 (M.D. Pa. 2015); *McGowan v. CORE Cashless, LLC*, No. 2:23-CV-524, 2023 WL 8600561, at *5 (W.D. Pa. Oct. 17, 2023); and *Marquis v. Farm Serv. Agency*, No. CV 14-6715, 2017 WL 465856, at *2 (D.N.J. Feb. 3, 2017)).

instances where there was clearly no conduct attributable to the relevant parties;[72] the plaintiffs failed to suffer any injury;[73] or the plaintiffs sued the wrong party.[74]

Since there is conduct that is traceable to Jackson, Defendant can also demonstrate that its injury has been proximately caused by its reliance on the alleged representations. For its injury, Defendant claims to be facing "ongoing fees and costs, prior expenditures, and reputational damage."[75] At this juncture, this allegation sufficiently identifies some form of redressable injury.[76]

Proximate causation requires Direct Building Supplies to allege "some direct relation between the injury asserted and the injurious conduct alleged …."[77] "In determining whether a particular act is the proximate cause of an injury, Pennsylvania courts apply the 'substantial factor' test as stated in the Restatement (Second) of Torts."[78] Using this test, "courts consider (1) the number of factors other than the actor's conduct that contributed to the harm, and the extent of their contribution, (2) whether the conduct created a force that was in continuous operation up to the time of the harm, or created a situation that is harmless unless

---

72 *See Polanco*, 988 F. Supp. 2d at 463.

73 *See Storm*, 90 F. Supp. 3d at 363 and *McGowan*, 2023 U.S. Dist. LEXIS 187257, at *3.

74 *See Marquis*, 2017 WL 465856, at *2.

75 Doc. 28 (Answer with Counterclaim) at 25.

76 *See e.g.*, *Servis One Inc. v. OKS Grp., LLC*, 528 F. Supp. 3d 359, 370 (E.D. Pa. 2021) ("As to the question of damages, the pleading requirement is minimal, as nominal damages are available as a remedy for fraud under Pennsylvania law") (citing *Sands v. Forrest*, 434 A.2d 122, 124 (Pa. Super. Ct. 1981)).

77 *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992))

78 *Chaleplis v. Karloutsos*, 609 F. Supp. 3d 341, 348 (E.D. Pa. 2022) (citing *Heeter v. Honeywell, Int. Inc.*, 195 F. Supp. 3d 753, 758 (E.D. Pa. 2016)).

acted upon by other forces for which the actor is not responsible, and (3) the lapse of time between the conduct and the harm."[79]

First, only Jackson's conduct contributed to the harm at issue. It was his alleged representations that prompted the third-party vendor and Direct Building Supplies to call him. Second, Plaintiff's alleged conduct created a relationship between himself, the third-party vendor, and Direct Building Supplies that was "in continuous and active operation up to the time of the harm."[80] Third, only a few months passed between the alleged representations and the harm that occurred from the purported September 28, 2021 TCPA violation. It is this allegedly manufactured violation that exposed Defendant to the harms at issue. Accordingly, Direct Building Supplies has adequately pled its claim for fraud.

**d. Direct Building Supplies' Third-Party Claim**

Finally, Defendant's third-party complaint against TechMedia Group does not alter this analysis.[81] In that complaint, Direct Building Supplies brought two indemnification claims and one count of breach of contract.[82] In the breach of contract claim, Defendant asserts that "TechMedia [Group] did not use industry best practices and did not adhere to all applicable state and federal laws …."[83]

79 *Id.*

80 *Id.*

81 *See* Doc. 30 (Third Party Compl.). Although unidentified in the counterclaim, the third-party vendor is presumably TechMedia Group.

82 The indemnification claims are irrelevant to this analysis as Direct Building Supplies is contractually entitled to indemnification regardless of the outcome of this fraud claim.

83 Doc. 30 (Third Party Compl.) ¶ 20.

Based on this allegation, Plaintiff contends that Defendant will "recover twice for the same injury" if it is allowed to maintain its counterclaim.[84] In making this argument, Plaintiff relies, in part, on the gist of the action doctrine.

Without deciding the issue, I note that Defendant's counterclaim is likely compulsory under Federal Rule of Civil Procedure 13(a).[85] Even if that were not the case, only discovery will reveal whether Jackson or the third-party vendor is responsible for the alleged conduct. For that reason, the Court cannot currently conclude that the "true gist or gravamen of the claim" is contractual in nature.[86] These are arguments that Plaintiff is certainly welcome to renew at a later time, but they do not currently support dismissal.

## III. CONCLUSION

In accordance with the above, Jackson's Motion to Dismiss is denied. Plaintiff is directed to file an answer to the counterclaim.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
Chief United States District Judge

---

84 Doc. 35 (Brief in Support of Motion to Dismiss) at 13.

85 *See e.g.*, *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384 (3d Cir. 2002) (describing FED. R. CIV. P. 13). I do not decide this issue because it is not currently before the Court.

86 *See e.g.*, *Metro. Grp. Prop. & Cas. Ins. Co. v. Hack*, No. 1:16-CV-1342, 2017 WL 1709403, at *4 (M.D. Pa. May 3, 2017).